SEAN L. BROHAWN, ESQ. (NV Bar # 7618)
REESE KINTZ BROHAWN, LLC
936 Southwood Blvd., Suite 301
Incline Village, NV  89451
Telephone: (775) 832-6800
Facsimile: (775) 832-6801
Sean@rkbpartners.com
*Attorneys for Defendants*

CLAYTON P. BRUST, ESQ. (NV Bar # 5234)
ROBISON BELAUSTEGUI SHARP & LOW
71 Washington Street
Reno, NV  89503
Telephone (775) 329-3151
cbrust@rbsllaw.com

DENNIS V. MENKE, ESQ. (CA Bar # 35104)
MENKE & MENKE, LLP
3161 Michelson Drive, Suite 1500
Irvine, CA 92312-4414
Telephone: 949.223.7280
dmenke@menke-menke.com
(Admitted to practice Pro Hac Vice)

LORRAINE G. HOWELL, ESQ. (CA Bar # 202319)
LAW OFFICES OF LORRAINE HOWELL
301 E. 17th Street, Ste. 210
Wells Fargo Building
Costa Mesa, CA 92627
Telephone: 949.646.5363
lghowell@sbcglobal.net
(Admitted to practice Pro Hac Vice)

*Attorneys for Plaintiffs, The Piateli Company, Inc.,*
*Mario Piatelli, Jack G. Frost, Jack Gibson Frost, Inc.,*
*J.D. Hbt, Hunt Bros. Producing Co., Inc. and*
*Robert Dierking*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| THE PIATELLI COMPANY, INC., a California Corporation; MARIO PIATELLI, an individual; JACK G. FROST, an individual; JACK GIBSON FROST, INC., a California corporation; J.D. HUNT, an individual; HUNT BROS. PRODUCING  CO., INC., an Oklahoma Corporation; and ROBERT DIERKING, an Individual. | Case No.: 3:12-cv-225-RCJ-WGC<br><br>**STIPULATION FOR EXTENSION TO FILE JOINT PRE-TRIAL PRETRIAL STATEMENT; ORDER** |

1          Plaintiffs,

2          v.

3

4   ALAN CHAMBERS, an individual; LAURA
    CHAMBERS, an individual, and DOES 1 through
5   10,

6          Defendants.
    _____/

7   ALAN CHAMBERS, an individual; LAURA
    CHAMBERS, an individual,
8

9          Counterclaimants

10         v.

11  THE PIATELLI COMPANY, INC., a California
    Corporation; MARIO PIATELLI, an individual;
12  JACK G. FROST, an individual; JACK GIBSON
    FROST, INC., a California corporation; J.D.
13  HUNT, an individual; HUNT BROS.
    PRODUCING  CO., INC., an Oklahoma
14  Corporation; and ROBERT DIERKING, an
    Individual,
15

16         Counter-Defendants

17  _____/

18        **STIPULATION FOR EXTENTION TO FILE JOINT
          PRETRIAL STATEMENT; ORDER**

19        The parties hereby stipulate and request an order from the Court granting the parties one

20  week extension to file a Joint Pretrial Statement in this matter.  The Joint Pretrial Statement is

21  currently due on February 26, 2014, and the parties are requesting a one week extension, up to

22  and including March 7, 2014 to file the Joint Pretrial Statement.  Counsel is working diligently to

23  draft the Joint Pretrial Statement.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1    This extension is not made for purposes of delay, but to allow the parties adequate time to

2    finalize their list of exhibits and depositions.  The current Joint Pretrial Statement is attached

3    hereto as Exhibit "1."

4        IT IS SO STIPULATED.

5    Dated: February 26, 2014                          Dated: February 26, 2014

6    ___/s/ Sean L. Brohawn_____                       ___/s/ Clayton P. Brust_____

7    Sean L. Brohawn, Esq.                             Clayton P. Brust, Esq.
     Reese Kintz Brohawn, LLC                          Robison, Belaustegui, Sharp & Low
8    936 Southwood Blvd., Suite 301                    71 Washington Street
     Incline Village, NV 89451                         Reno, NV 89503
9    (775) 832-6800                                    (775) 329-3151

10

11                              **<u>ORDER</u>**

12       IT IS SO ORDERED.

13       Dated this  27  day of ___February____, 2014

14

15       _____

16               UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INDEX OF EXHIBITS**

| Ex. Number | Exhibit Description | Number of Pages (excluding Ex. Tab) |
|:---:|:---:|:---:|
| 1 | Joint Pretrial Statement - DRAFT | 21 |

# Exhibit 1

# Exhibit 1

Clayton P. Brust, Esq. (SBN 5234)
Robison Belaustegui Sharp & Low
71 Washington Street
Reno, NV 89503
Tele: 775.329.3151
cbrust@rbsllaw.com

Dennis V. Menke, Esq. (CA SBN 35104)
Menke & Menke, LLP.
3161 Michelson Drive, Ste. 1500
Irvine, CA 92612-4414
Tele: 949.223.7280
dmenke@menke-menke.com
(Pro Hac Vice)

Lorraine G. Howell, Esq. (CA SBN 202319)
Law Offices of Lorraine Howell
301 E. 17th Street, Ste. 210
Wells Fargo Building
Costa Mesa, CA 92627
Tele: 949.646.5363
lghowell@sbcglobal.net
(Pro Hac Vice)

*Attorneys for Plaintiffs, The Piatelli Company, Inc.,
Mario Piatelli, Jack G. Frost, Jack Gibson Frost, Inc,
J.D. Hbt, Hunt Bros. Producing Co., Inc. and
Robert Dierking*

Sean L. Brohawn, Esq.
Reese Kintz Brohawn, LLC.
936 Southwood Blvd., Ste. 301
Incline Village, NV 89451
Tele: 775.832.6800
sean@rkbpartners.com
*Attorney for Defendants
Alan Chambers and Laura Chambers*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA -- RENO

THE PIATELLI COMPANY, INC., a
California corporation; MARIO PIATELLI,
an individual; JACK G. FROST, an individual;
JACK GIBSON FROST, INC., a California
Corporation; J.D. HUNT, an individual;
HUNT BROS. PRODUCING CO., INC.,

CASE NO:  **3:12-cv-00225-RCJ-WGC**

an Oklahoma corporation; and ROBERT
DIERKING, an individual,

**JOINT PRETRIAL STATEMENT**

    Plaintiffs,

 vs.

ALAN CHAMBERS, an individual;
LAURA CHAMBERS, an individual, and
DOES 1 through 10, inclusive,

    Defendants.
_____/

  Following pretrial proceedings in this cause,

  IT IS SO ORDERED:

I

  This is an action for Breach of Contract, Intentional Interference with Contractual Relations,
Breach of the Covenant of Good Faith and Fair Dealing, Breach of Fiduciary Duty, Injunctive Relief,
Declaratory Relief, and Damages.

  The Plaintiffs, THE PIATELLI COMPANY, INC., a California corporation, MARIO
PIATELLI, an individual, JACK G. FROST, an individual, JACK GIBSON FROST, INC., a
California corporation, J.D. HUNT, an individual, HUNT BROS. PRODUCING CO., INC, a
Oklahoma corporation, and ROBERT DIERKING, an individual, are seeking damages in their
Complaint from Defendants', ALAN CHAMBERS, an individual, and LAURA CHAMBERS, an
individual.

  Defendants/CounterClaimants, ALAN CHAMBERS, an individual, and LAURA CHAMBERS,
an individual are seeking _____ in their Counterclaim from
_____.

  The Plaintiffs contend that

    A. Defendants ALAN CHAMBERS  and LAURA CHAMBERS continually
      sabotaged the efforts of Lucky Boy LLC and Plaintiffs to carry out the purpose
      of Lucky Boy LLC and the agreement of the Plaintiffs and Chambers by

1. failing to respond to requests for information about the Mine,

2. failing to be accessible by telephone,

3. failing to respond to e-mails

4. removing gold from the Mine and failing to provide Plaintiffs with an accounting for the value of the gold removed despite numerous requests

5. prohibiting Plaintiffs' access to the Mine by locking the gate and refusing to give Plaintiffs a key

6. advertising for a joint venture for the Defendants on Craig's List representing that the Defendants own the 800-acre Mine property, and for a 20% investor in ICMJ's Prospecting and Mining Journal to purchase the 20% owned by partners valued at $1,200,000, after meeting the Yasheng Group in November, 2011, who was investigating the property to purchase the Mine from Lucky Boy LLC for $4,000,000

B. Chambers breached the Agreement to Sell and the Operating Agreement by

1. representing he owns 80% of the Mine and that there was a problem with the Yasheng group

2. refusing to consent to the sale of the Mine to the Yasheng Group for Four Million Dollars ($4,000,000)

3. preventing the Yasheng Group from accessing the Mine to conduct its due diligence

4. refusing to provide Plaintiffs with marketing information about the Mine including the amount of gold that has been extracted,

5. removing gold from the Mine

6. not obtaining the proper permits for drilling

7. defaming Lucky Boy LLC's President, Mario Piatelli

8. presenting competing opportunities to the Yasheng Group

9. covering up the shaft that exposed the vein of gold through which a number of studies and assays were obtained, and

1      10. failing to contribute or reimburse for expenses

2     C.  As a partner in Lucky Boy LLC, Defendants owe a fiduciary duty to Plaintiffs

3        which Defendants breached by their acts and conduct.

4     D.  Defendants' willful, oppressive malicious and fraudulent acts and conduct

5        disrupted and interfered with Lucky Boy LLC's contractual relationship with the

6        Yasheng Group causing damage to Plaintiffs and Plaintiffs are entitled to

7        punitive damages.

8     E.  Defendants willful, oppressive, malicious, and fraudulent acts and conduct

9        interfered with Lucky Boy LLCs prospective economic relationship between the

10       Yasheng Group on the one hand and Lucky Boy LLC and Plaintiffs on the other

11       hand, and interfered with a prospective economic relationship between the

12       Yasheng Group on the one hand and P:iatelli and the Piatelli Company on the

13       other hand as to additional properties upon the conclusion of a sale of the Mine,

14       causing damage to Plaintiffs and Plaintiffs are entitled to punitive damages.

15     F.  Defendants defamed Plaintiff Piatelli, a licensed real estate broker and highly

16       respected real estate auctioneer for over fifty (50) years with a high reputation

17       for integrity within the auctioneer and real estate communities which reputation

18       resulted in economic relations with the Yasheng Group.  Defendants'

19       unprivileged, willful, malicious, oppressive and fraudulent acts and conduct  of

20       publishing statements that Piatelli committed fraud, forged a deed, forged

21       Chambers signature on Lucky Boy LLC's Operating Agreement and that

22       criminal charges and a lawsuit were being filed against him,  caused damages to

23       Piatelli and Piatelli is entitled to punitive damages.

24     G.  Plaintiffs are entitled to enlarge the Injunction that was issued by the Court

25       against Defendants to include injunction against occupying the Lucky Boy LLC

26       property or communicating with any prospective buyer of the Lucky Boy LLC

27       property.

28

1        H.  Plaintiffs are entitled to payment from Defendants of Plaintiffs' costs, expenses

2        and attorney fees pursuant to the Operating Agreement, Paragraph 12.9.

16    The Defendants/CounterClaimants contend that

17        A.   Plaintiffs

II

Jurisdiction over this case is founded on diversity of citizenship under 28 U.S.C. § 1332, in that citizenship between Plaintiffs and Defendants is diverse, and the amount in controversy exceeds $75,000.  Venue is proper in this District under 28 U.S.C. 1391(a) (1).

III

The following facts are admitted by the parties and require no proof:

In late 2006 and early 2007, Defendant Alan Chambers ("Chambers") sought to have Mario Piatelli, Jack Frost, Robert Dierking, and J.D. Hunt (the "Investors" or "Plaintiffs") invest in his 800-acre gold mine (the "Mine") located near Hawthorne, Nevada.  On March 8, 2007 Chambers and the Investors executed a joint agreement (the "Joint Agreement").  Pursuant to the Joint Agreement, Chambers conveyed the Mine to the recently formed Lucky Boy Mining and Development, LLC ("Lucky Boy") in exchange for an 80% ownership interest in Lucky Boy and, among other benefits, $30,000 from the Investors.  An operating agreement (the "Operating Agreement") executed the same day provided that Lucky Boy would be managed and controlled by a management committee consisting of all five of its members.  A majority vote of the members was to control all aspects of managing the company, and Piatelli was appointed as president by a majority of the members.  The members agreed that Lucky Boy's purpose was to prove the profitability of the Mine and market it for a price ranging from $3,000,000 to $5,000,000.

In 2006, prior to the execution of the Joint Agreement, Chambers apparently executed a commission agreement (the "Commission Agreement") with the Piatelli Company, wherein he agreed to pay a ten-percent commission to Piatelli, provided that Piatelli produced a ready, willing, and able buyer.  During his deposition, Chambers repeatedly denied the existence of the

1   Commission Agreement until the fully executed document was presented to him, at which point he
2   admitted signing it.

3          Shortly after Lucky Boy's formation Piatelli and Frost began an aggressive program
4   to find a large investor or buyer.  During a five-year period from March 2007 to March 2012, Piatelli
5   and Frost created advertising materials and marketed the property to dozens of prospective purchasers
6   around the world.  Although the pair received multiple offers, most of the prospective purchasers were
7   not qualified buyers, but were instead interested in packaging a deal to sell stock.

8          During this period, Chambers apparently operated the Mine without any permits and
9   without providing an accounting to the Investors, failed to respond to requests for information from
10  the Investors, locked the Mine and refused to provide a key to the Investors, denied the Investors the
11  ability to inspect the Mine, and even attempted to see the Mine without the approval of the Investors.

12         Early in 2007, Lucky Boy retained the services of geologist Chris Shaw ("Shaw"),
13  who investigated certain portions of the mining property, obtained samples, and prepared geological
14  reports.  While investigating the property, Shaw was able to enter a large open shaft (the "Shaft") and
15  take samples and photographs of a visibly large vein of gold, which revealed significant information
16  about the value of the mine.

17         In late 2010, Dr. Victor Asai – a representative of The Yasheng Group ("Yasheng")
18  contacted Piatelli and Frost to discuss the Mine.  After initial discussions about the Mine, the
19  chairman and president of Yasheng agreed to visit the Mine on November 18, 2011.  Dierking
20  contacted Chambers and asked him open the Mine for the visit.  He further explained that Yasheng
21  was interested in purchasing the Mine.  Chambers reacted negatively to this information and stated he
22  did not want to sell the property.

23         During Yasheng's November, 2011 visit to the Mine, Dierking observed that
24  Chambers had begun to fill the Shaft containing the visible vein of gold.  Contrary Dierking's onsite
25  observation, Chambers testified, in his deposition, that he had totally closed the Shaft six months prior
26  to the November, 2011 visit.[1]

27
28  _____
    [1]  Prior to the November, 2011 visit, Piatelli was negotiating with a different prospective buyer.  On October 26, 2011,
    Piatelli described the proposed transaction in an email to Chambers.  Later that day, Chambers and his wife, Defendant
    Laura Chambers responded with an email stating that Piatelli should no longer contact them, that they had their own deals,

In February 2012, Yasheng and Lucky Boy entered into an Option to Lease agreement and a Lease and Purchase Option agreement. The Option to Lease agreement provided a ninety-day period for Yasheng to conduct an in-depth investigation of the Mine and if satisfactory, Yasheng could elect to lease the Mine under the Lease and Purchase Option agreement by paying $500,000.  If Yasheng leased the Mine, it could then, at any time during the eighteen-month lease period, exercise its option to purchase by paying the balance of $4,000,000.  The Option to Lease did not permit Yasheng to extract ore.

On March 6, 2013, Dr. Asai called Chambers to arrange for him to open the Mine for Yasheng's executives and professionals. During that conversation, Chambers presented that he owned 80% of the Mine itself (not of Lucky Boy) and that he would not open the Mine unless he saw a contract.  The Parties agreed to a meeting on March 8, 2012, in Hawthorn, Nevada, between the president and chairman of the Yasheng board, four of Yasheng's geologists, Dr. Asai, Lucky Boy's geologist, and two professional companies from which Yasheng sought proposals for the due diligence work (Summit Engineering and Broadbent Environmental).

During the meeting, the group desired to see the visible vein of gold in the Shaft, but Chambers told the group that they could not get to the Shafter because it was "all snowed in." Nonetheless, the group proceeded to the Shaft and found it filled-in with dirt.  When Dr. Asai asked where the Shaft was located, Chambers responded "you are on top of it."  The group had apparently driven over it without Chambers warning them of the potential danger.  Chambers claimed that he filled the Shaft because of the risk of earthquakes, but prior to his actions, the Shaft had been open for sixty to seventy years without any earthquake-related harm.  Because of Chambers actions, the group was unable to view the prominent vein of gold it desired to inspect.

After the visit to the Mine, the group met at the nearby El Capitan hotel, where Shaw gave a presentation about the Mine.  During this meeting, both Chambers and his wife were very disruptive, claiming that they owned 80% of the Mine, knew nothing of any contract between Lucky Boy and Yasheng, that the Mine did not have the proper permits, that Piatelli had forged the

---

and that they did not need the partners anymore.  At his deposition, Chambers denied knowledge of the responsive email, but Laura Chambers has testified that Chambers dictated it to her.

deed to the Mine, and the criminal charges and lawsuit were being filed against him.  Chambers and his wife were apparently so disruptive during the visit and subsequent meeting that the chairman and CEO of Summit Engineering informed Dr. Asai that Summit was unwilling to perform the due diligence work while Chambers was present, because he believed that Chambers would not behave safely, responsibly, or legally at the Mine.

In fact, Chambers and his wife created such doubt in the minds of the Yasheng executives that Dr. Asai decided to drive to Los Angeles to meet with Piatelli and determine Chambers' authority.  Before Dr. Asai departed, Chambers and his wife approached him and told him that Chambers had another mine for sale, which he would offer to sell to Yasheng.  In response, Dr. Asai explained that there would be no further discussions until Lucky Boy resolved its internal conflict.

In Los Angeles, Piatelli provided Dr. Asai with copies of the deed and the Lucky Boy Operating Agreement, which authorized a majority of the management committee to make decisions.  When Dr. Asai returned to Hawthorn, Laura Chambers again approached him, stating that she and Chambers wanted to buy out their partners and do the mining project with Yasheng, but that they would not pull any permits because they did not want the state to know what they were doing.  Dr. Asai told her to stop talking and explained that Yasheng required all proper permits.  Since that time, Chambers has repeatedly attempted to negotiate with Yasheng's president by telephone.

In early April, 2012 Piatelli sent a copy of the Yasheng transaction documents to all members, including Chambers.  The documents were executed by members Frost, Dierking, and Hunt on or about April 7, 2013.  Chambers refused to sign the documents, but he admits that he received them.

On July 26, 2012, Lucky Boy held a duly noticed member's meeting, via conference call, to ratify certain actions taken by Lucky Boy, including the execution of the Yasheng Agreement, and allow for needed discussion between the members.  All of Lucky Boy's members participated in the conference call, including Chambers and his counsel, Attorney Brohawn.  Chambers, however, expressed an objection to the meeting and claimed that he was participating under protest.  Near the end of the meeting, after discussion on various agenda items, Piatelli called for a vote to ratify the

1   Yasheng Agreement and approve the other items on the agenda.  Four of the members voted "Aye,"

2   and Chambers voted "No."  Chambers then restated his objections to the meeting.

3                      On April 23, 2012, the Investors[2] filed a complaint in this Court against Alan and

4   Laura Chambers (collectively "Defendants"), alleging (1) breach of contract; (2) breach of implied

5   covenant of good faith and fair dealing; (3) breach of fiduciary duty; (4) interference with contractual

6   relations; (5) interference with prospective economic advantage; and (6) defamation.  On April 26,

7   2012, the Investors filed a motion for preliminary injunction, which this Court granted in an order [21]

8   dated May 11, 2012.  Specifically, the Court enjoined Defendants from, among other things, taking

9   any actions that might interfere with any contract between Lucky Boy and Yasheng.

10                     On April 10, 2013 Defendants filed a motion for partial summary judgment [32],

11  contending that they are entitled to judgment as a matter of law on all claims other than (1) Piatelli's

12  claim for defamation, and (2) the claims for a proportionate share of unreimbursed regular operating

13  expenses.  The Investors filed a response [33] on April 25, 2013, and the Court ruled on Defendants'

14  motion for partial summary judgment on January 6, 2014 [35].

15                     Defendants do not dispute the fact that four of the five members of Lucky Boy LLC

16  executed the Yasheng transaction documents.

17                     The Operating Agreement does not require annual or regular meetings of the

18  Members and in any instance in which approval of the Members is required under the Operating

19  Agreement such approval may be obtained in any manner permitted by the Act except by proxy.

20  (Operating Agreement Par. 6.2).  The Operating Agreement provides that the term "Act" refers to the

21  Limited Liability Act which expressly provides that the term "vote" includes authorization by written

22  consent.

23                     It is undisputed that in April, 2012, four of the five Members of Lucky Boy LLC, a

24  clear majority, signed the Yasheng Agreement which constitutes written consent.  Thus, the Yasheng

25  Agreement was approved by a majority vote.

26

27  _____

28  [2]  The Piatelli Company, Inc., Hunt Brothers Producing Company, Inc., and Jack Gibson Frost, Inc. are also named as
    plaintiffs in this action.  These are all corporations that are owned and operated by the individual Investors, through which
    the Investors either made the investment or to which they later transferred their interest in the LLC.

1         The Yasheng Agreement was also "ratified" by a meeting of the Members by

2  Conference Call on July 26, 2012, in which all members, including Defendants and their counsel,

3  participated.  The ratification related back and is equivalent to prior authority to make the contract.

4         The Plaintiffs did not breach the Operating Agreement by signing the Yasheng

5  Agreement; the Plaintiffs signatures on the Yasheng Agreement were not "unauthorized."

6         The acts and conduct of the Defendants were not excused by any acts of Plaintiffs.

7         The Plaintiffs did not conceal the Yasheng Agreement from Defendants

8         The email sent by Piatelli to Lucky Boy LLC's geologist, Chris Shaw informing him

9  that the Yasheng Group would be coming to visit the Mine, and that he was not to let Chambers know

10  "at this time" that a Sale Agreement was signed, was written out of fear by Plaintiffs that Chambers

11  would sabotage the Yasheng deal, was not conduct by Plaintiffs that would excuse Chambers'

12  behavior, but rather conduct of reasonable fear of Chambers' behavior.  Piatelli's email does not

13  evidence intent to keep Chambers from voting on the deal, but to prevent him from sabotaging it.

14         Defendants sent an email to Piatelli in November, 2011, directing him to cease

15  contacting Defendants about potential deals to sell the Mine.

16         Chambers was aware in November, 2011, that a majority of the Members of Lucky

17  Boy LLC supported the potential deal with Yasheng

18         In April, 2012, Chambers had an opportunity to sign the Yasheng transaction

19  documents and thereby vote on the transaction.  In July, 2012, Chambers had another opportunity to

20  consent to the Yasheng transaction when he participated in the Conference Call meeting of the

21  Members.

22         There was no act by any Plaintiffs that would have caused Defendants' alleged

23  culpable behavior.

24         Par. 6.2 of the Operating Agreement does not create an enforceable duty as to the

25  Defendants personally or impose a condition upon which the Members' liability depends.  It defines

26  the situations in which Members are without authority to bind the LLC.

27         Defendants cannot argue that an alleged violation of Par. 6.2 excuses the

28  Defendants' conduct.

1

2

3

IV

4

The following facts, though not admitted, will not be contested at trial by evidence to the

5

6 contrary

7

8

V

9

The following are the issues of fact to be tried and determined upon trial.   (Each issue must be

10

stated separately and in specific terms)  [If counsel cannot agree on statement of issues of fact or law,

11

the pretrial order should include separate statements]

12

13

14

15

16

17

VI

18

The following issues of law are to be tried and determined upon trial (Each issue of law must be

19

stated separately and in specific terms)  [If counsel cannot agree on statement of issues of fact or law,

20

the pretrial order should include separate statements]

21

22

23

24

25

VII

26

a)   The following exhibits are stipulated into evidence in this case and may be so marked by the

27

Court:

28

PRETRIAL ORDER

Case No.  3:12-CV-00225-RCJ-WGC

1  1)  Plaintiffs' Exhibits:

2    1. Joint Agreement for Purchase of Real Estate, bate-stamped P1016-P1018;
     2. Facsimile cover page, dated March 13, 2007, with Operating Agreement, bate-
3       stamped P1019-P1042;
     3. Chris Shaw email(s) dated April 27, 2008 and June 2, 2008, bate-stamped P1157 and
4       P1160;
     4. Chris Shaw report, dated December 21, 2007, bate-stamped P1225-P1247;
5    5. Chris Shaw email and report, dated June 18, 2008, bate-stamped P1258-P1281;
     6. Chris Shaw email, dated June 18, 2008, bate-stamped 1284-1285;
6    7. Final Report dated, October 8, 2007, bate-stamped P1035;
     8. Invoice American Assay Laboratories, dated October 16, 2007, bate-stamped P1038;
7    9. American Assay Laboratories Final Report re: Nevada Limited Partnership, bate-
        stamped P1042;
8    10. Chris Shaw emails dated December 2, 2007, bate-stamped P1181-P1183;
     11.  Shaw billing statement and Piatelli payment to Chris Shaw, October 13, 2007, bate-
9       stamped P1187-P1188;
10   12. American Assay Laboratories Sample Submittal Form, bate-stamped P1189-P1193;
     13. Chris Shaw report, "Results of the Investigation", bate-stamped P1346-P1362,
11      P1362a.p1-P1362a.p6;
     14. Geological Report on Lucky Boy Mine by Chris Shaw, bate-stamped P1366-P1369;
12   15. Memo to "Peter" from "Mario", dated July 5, 2011, with Report from Chris Shaw,
        bate-stamped P1380-P1390;
13   16. Commission Agreement executed by Chambers and Piatelli, dated August 21, 2006,
        bate-stamped P1405;
14   17. Email correspondence between Piatelli and Shaw, and safety memo prepared by
15      Shaw, bate-stamped P1391-P1401;
     18. Email correspondence, bate-stamped P1149-P1151, P1163-P1165, P1167-P1185;
16   19. Piatelli's spreadsheets (3);
     20. Piatelli facsimile cover sheet to Chambers with Option Lease, bate-stamped P3037-
17      P3057;
18   21. Second Amended Preliminary Report, dated June 7, 2007, bate-stamped P1662-
        P1693;
19   22. Piatelli and Cow County Title Company correspondence, bate-stamped P1694-
20      P1702, P1709-P1717;
     23. Piatelli correspondence to Cow County Title Company with Agreement to Close
21      Escrow and Agreement for Option to Purchase, bate-stamped P1718-P1728;
     24. Piatelli payment to Cow County Title and wire instructions, bate-stamped P1729-
22      P1732;
23   25. Piatelli payment and memo to Mineral County Recorder, bate-stamped P1733-
        P1747, and Nevada Secretary of State Lucky Boy invoice (not bate-stamped);
24   26. Title Report, dated November 17, 2011, bate-stamped P1747a.p1-P1747a.p22;
25   27.  Cover page with Preliminary Report dated December 6, 2006, bate-stamped P1770-
        P1783;
26
27
28

28. Cow County Title Company facsimile page with recorded documents, Grant, Bargain, Sale Deed, Declaration of Value and emails, dated October 20, 2008, bate-stamped P1795-P1805;

29. Title Report with cover page, bate-stamped P1806, P1806a.p1-P1806a.p10-P1807;

30. Preliminary Title Report, page 2-5, invoice, and Amended Preliminary Title Report, bate-stamped P1808-P1821;

31. Email correspondence between Piatelli and Laura Chambers, bate-stamped P1837-P1842, P1844-P1858;

32. Belding correspondence regarding Executive Summary for Lucky Boy, bate-stamped P2740-P2743;

33. Corrected Grant Deed, bate-stamped P1748-P1756;

34. Marketing materials, bate-stamped P2700, P2751-P2753;

35. Option to Lease and email correspondence Belding/Saunders, bate-stamped P2755-P2777;

36. Phoenix Mining correspondence and miscellaneous emails between Saunders/Belding/Piatelli and Frost, bate-stamped P2778-P2789, P2791;

37. December 6, 2006 Title Report, bate-stamped P1776-P1783;

38. Phoenix Mining correspondence dated 04/26/11, miscellaneous emails between Saunders/Belding/Piatelli/Yates/Kuhns, bate-stamped P2813-P2858;

39. Marketing material, bate-stamped P2161-2162, P2165-2166, P2175-P2183, P2186-P2189;

40. Marketing and Auction material, bate-stamped P2211-P2235;

41. Golden Century Corp. /Mathieu correspondence dated 05/22/09 to Mario, bate-stamped P2236-P2240;

42. Email correspondence between Alexander Kintis and Mario Piatelli, bate-stamped P2287-P2300;

43. Email correspondence between Kintis and Piatelli, bate-stamped P2301-P2312;

44. International Development Corp. to Piatelli, and miscellaneous emails between Killinger/Piatelli/Shaw, marketing material with map, bate-stamped P2321-P2353;

45. Email correspondence between Chambers/Piatelli and Heimotwitz regarding Infinity Gold Mining, bate-stamped P2357-2358, P2364-P2366;

46. The Piatelli Company marketing , correspondence to Chambers, dated 01/19/2007, bate-stamped P2368-2370;

47. Email correspondence between Piatelli/McDermot/Shaw, bate-stamped P2374-2383, P2386-2387, P2390-2394, P2399, P2422-2423, P2428, P2437, P2451;

48. December 29, 2007 Marketing material P2453P2458;

49. Mailing labels and marketing material, bate-stamped P2461-2470, P2481-P2490;

50. Email correspondence between McDermot/Piatelli/Phelps/Pinnacle Construction-Builders, and Letter of Intent, bate-stamped P2494-P2505;

51. Permission to Visit slip granted to McDermot, McCullough and Neal, dated 09/16/2011, memos and email from Piatelli to "Lucky Boy" members; Chambers and McDermot, bate-stamped P2525-2526, P2533-2537;

52. Correspondence from Masson to Hunt, Earth Exploration correspondence to "Lucky Boy" members, McDermot and Piatelli correspondence, bate-stamped P2540-2550;

53. Piatelli correspondence to McDermot regarding Earth Exploration visit to Mine, bate-stamped P2562-2563, P2568-2572;

54. Stock Purchase Agreement, Petro America Corp. information, Google search re: Petro America, bate-stamped P2579-2589;

55. General Marketing Services memo to Piatelli regarding C.B. Johnson tentative deal, dated 01/20/09, bate-stamped P2644, P2646;

56. General Marketing Services to Piatelli Partners from Frost regarding marketing, dated 01/12/2007, bate-stamped P2863-P2865;

57. Piatelli correspondence to Pacific North West Capital Corp./Barr, dated 01/21/2008, bate-stamped P2948, P2952, P2954, P2956-2960;

58. Email correspondence between Piatelli and Johnson/Global Mining Exploration Ventures, bate-stamped P2980-P2988;

59. Motel information for visitors of Lucky Boy Mine, bate-stamped P2649;

60. Marketing/Auction information, Belyayev correspondence, stock report, miscellaneous correspondence between Piatelli/Douglas/Rod and Tomich, bate-stamped P2652-2658, P2665-2668, P2670-2671, P2683-2693, P2695-2698, P2710-2713, P2716-2719;

61. Financial Services information, bate-stamped P2720-2721;

62. General Marketing Services marketing material, bate-stamped P2025-2032;

63. Correspondence to Chambers from Piatelli regarding expenses in the amount of $18,500.00 and $7,500.00, bate-stamped P2059-2062;

64. March 12, 2007 correspondence to Piatelli from Hunt regarding Operating Agreement and Joint Agreement for Purchase, bate-stamped P2075ap1- P2075ap4;

65. Term Sheet, bate-stamped P2018-P2021;

66. July 25, 2007 correspondence from Piatelli to McCormick regarding road used by public, Memo to Dierking from Hunt, bate-stamped P2170, P2123-2124;

67. February 9, 2012 Confidential Memo to Shaw from Piatelli, bate-stamped P2138-2140, P2143, P2145;

68. Email correspondence between Chambers and Lucky Boy partners, bate-stamped P1878-1879, P1839, P1837, P1840, P1844, P1876, P1875, 1874, P1895-1896;

69. Email correspondence between Piatelli and Chambers, Chambers correspondence dated January 25, 2011 to Partners/lawyers, bate-stamped P1863, P-1871-P1873, P1898, P1868,, P1899, P1870, P1865-1866, P1862, P1858, P1857, P1856, P1850-1851, P1853-1855, P1845-1849;

70. January 10, 2010 Purchase Option Sale Agreement, 50/50 Investor Partnership Deal Pro-Forma, General Marketing Services memo, terms and conditions of Pre-Auction Sale, GMS memo to Piatelli, email from Piatelli to Chambers regarding books, bate-stamped P3110-3117;

71. Laura Chambers gold mine listing, correspondence with Sally @ ICMJ's Prospecting & Mining Journal, bate-stamped CMB000336-344;

72. July 26, 2012 Transcript of Members' Meeting Conference Call, (9pages);

73. Lucky Boy 2008 Mid-Year Report;

74. Cow County Title Co. Amended Title Report, bate-stamped P1815-1821;

75. File stamped document 141857, Joint Agreement for Purchase of Real Estate, dated 05/17/2007, bate-stamped P1831-P1836;

76. Laura Chambers email correspondence, bate-stamped P1837-P1848, P1879-1880;

77. Email correspondence Belding/Shaw/Saunders/ Piatelli, bate-stamped P1888-1894;

78. Correspondence to Chambers, dated November 17, 2010 from Belding, bate-stamped P1895-1896;

79. Email correspondence Chambers to Piatelli, Belding to Chambers, bate-stamped P1897-1899;

80. Email correspondence between Piatelli/Joe and McDermot, bate-stamped P1902-1908;

81. Mineral County Assessor Notice dated November 8, 2010, to Chambers regarding (3) signatures required, bate-stamped P1923-1924;

82. Report to All Partners and Tax Statements for 2007-08, 2008-09,2009-10, 2011-12;

83. Nevada Secretary of State filings, bate-stamped P1941-1944, P1991—1992, P19561958, P1984ap1-1984ap6, P1985-1985a, P1986-1988, P1996-1997, P3061-3062;

84. Nevada Secretary of State- Articles of Organization, bate-stamped P1945-1950a-1951a;

85. Change of Resident Agent, bate-stamped P1998-2007;

86. Email Asai to Belding regarding Yasheng transaction, bate-stamped P2995-3000;

87. Memo from Shaw regarding photos of mine; bate-stamped P3001-3002;

88. Draft Term Sheet for Yasheng, bate-stamped P3003-3006;

89. Asai email to Dierking regarding Yasheng, Piatelli memo to all parties regarding Yasheng transaction, bate-stamped P3007-3008;

90. Shaw correspondence to Piatelli and Frost regarding Yasheng employing, bate-stamped P3013-3016;

91. Communications regarding Yasheng transaction, bate-stamped P3017-3020;

92. Piatelli memo to First American Title, bate-stamped P3035-3035a;

93. Emails regarding Yasheng visit, Asai memo to Belding regarding Chambers' conduct at March 2012 meeting, bate-stamped P3065-30775, P3077;

94. Asai email correspondence to Piatelli with Yasheng Group brochures, bate-stamped P3079, P3083-3107;

95. Summit Metals Term Sheet, bate-stamped P2729-2739;

96. Title Policy communications, bate-stamped P1757-P1766;

97. Title company communication, corrected deed, and Chambers demand for additional funding, bate-stamped P1789-P1804;

98. February 2019 Amended Preliminary Report, bate-stamped P1806ap1-P1806ap10;

99. Email Asai to Piatelli with signed Yasheng documents – Option to Lease and Purchase, bate-stamped P3022-P3034;

100.    Fax communication to Chambers with Yasheng documents, bate-stamped P3036-P3057;

101.    Summit Agreement;

102.    Lucky Boy Brochures;

103.    Meyer Elkins Deal-Greece

2) Defendants' Exhibits

1.   True and Correct Copy of the Operating Agreement, bate-stamped CHA 000001 – 000025;

2.   Forged Operating Agreement, bate-stamped CHA 000025-000064;

3.   Noted, bate-stamped CHA 000065;
4.   Mineral County Assessor, bate-stamped CHA 000066;
5.   6-18-08 Memo to: Alan Chambers, bate-stamped CHA 000067 – 000068;
6.   Record of funds, bate-stamped CHA 000069 – 000071;
7.   6-16-2008 Loan, bate-stamped CHA 000072
8.   Page 3 and 4 of letter, bate-stamped CHA 000073 – 000074
9.   Page 4 of letter, bate-stamped CHA 000075;
10.  8-6-07 receipt, bate-stamped CHA 000076;
11.  8-6-07 letter, bate-stamped CHA 000077;
12.  3-18-08 letter, bate-stamped CHA 000078;
13.  Alan-Mario letter, bate-stamped CHA 000079;
14.  Memo from Alan Chambers, bate-stamped CHA 000080;
15.  9-28-11 Letter, bate-stamped CHA 000081 – 000082;
16.  Memo to Alan and Laura Chambers, bate-stamped CHA 000083 – 000085;
17.  Parcel results; bate-stamped CHA 000086;
18.  2-16-08 letter; bate-stamped CHA 000087;
19.  11-8-10 assessor letter; bate-stamped CHA 000088;
20.  12-20-11 document inquiry, bate-stamped CHA 000089 – 000090;
21.  6-16-08 letter, bate-stamped CHA 000091;
22.  6-8-08 letter, bate-stamped CHA 000092 – 000093;
23.  8-30-07 report to all partners, bate-stamped CHA 000094;
24.  7-10-07 invoice, bate-stamped CHA 000095;
25.  Checks, bate-stamped CHA 000096;
26.  2007-2008 taxes, bate-stamped CHA 000097 - 000098;
27.  06-09-08 valuation of Lucky Boy Mine, bate-stamped CHA 000099;
28.  05-12-08 auction letter, bate-stamped CHA 000100;
29.  2-26-08 letter, bate-stamped CHA 000101 – 000102;
30.  10-6-08 letter, bate-stamped CHA 000103 – 000105;
31.  11-17-10 letter, bate-stamped CHA 000106 – 000107;
32.  Nevada Secretary of State Entity Information, bate-stamped CHA 000108 – 000111;
33.  Lucky Boy and Development, bate-stamped CHA 000112 - 000114

b)   As to the following additional Exhibits, the parties have reached the following Stipulations:

3)   Stipulations as to Plaintiffs' Exhibits

4)   Stipulations as to Defendants' Exhibits

c)   As to the following Exhibits, the party against whom the same will be offered objects to their admission upon the following grounds:

    1)   Objections to Plaintiffs' Exhibits

    2)   Objections to Defendants' Exhibits

d)   Depositions:

    1)   Plaintiffs will offer the following depositions   [name of deponent, page/line of portions to be offered; party or parties against whom being offered]

       Alan Chambers,

       Laura Chambers,

       J.D. Hunt,

       Ruby Dierking

       Robert Dierking,

    2)   Defendants will offer the following depositions: [name of deponent, page/line of portions to be offered; party or parties against whom being offered]

e)   Objections to Depositions

1

2   1) Defendants object to Plaintiffs' depositions as follows:

3

4

5   2) Plaintiffs object to Defendants' depositions as follows:

6

7

8

9                  VIII

10 The following witnesses may be called by the parties upon trial:

11 a) The Plaintiffs' Witness:

       Mario Piatelli
12      c/o Dennis Menke, Esq.
       3161 Michelson Drive, Ste. 1500
13      Irvine, CA 92612

14

       Jack Frost
15      c/o Dennis Menke, Esq.
       3161 Michelson Drive, Ste. 1500
16      Irvine, CA 92612

17

       Chris Shaw
18      644 Castle Way
       Winnemucca, NV 89445
19

20

       Dr. Victor Asai
21      c/o Yasheng Group
       805 Veterans Blvd., #228
22      Redwood City, CA 94063

23

       Tom Gallagher
24      c/o Summit Engineering
       5405 Mae Anne
25      Reno, NV 89523

26

       Phil Baumann
27      c/o Summit Engineering
       5405 Mae Anne
28      Reno, NV 89523

b)    The Defendants' Witness  [state names and addresses]


IX

Counsel have met and herewith submit a list of three (3) agreed-upon trial dates:

June 9, 2014; June 16, 2014; and/or June 23, 2014.

X

It is estimated that the trial herein will take a total of _____ days.

APPROVED AS TO FORM AND CONTENT

Dated: _____, 2014.          Dated: _____, 2014.



_____          _____
Lorraine G. Howell, Esq.                 Sean L. Brohawn, Esq,
Dennis V. Menke, Esq.                    Reese Kintz Brohawn, LLC.
Clayton P. Brust, Esq.                   936 Southwood Blvd., Ste. 301
71 Washington Street                     Incline Village, NV 89451
Reno, NV 89503                           775.832.6800
775.329.3151



XI

ACTION BY THE COURT

a)    This case is set down for Court/jury trial on the _____ calendar on

_____.  Calendar call shall be held on

_____.

b)    An original and two (2) copies of each trial brief shall be submitted to the Clerk on or

before _____.

c)    Jury trials:

1       1)  An original and two (2) copies of all instructions requested by either party shall be

2          submitted to the Clerk for filing on or before _____.

3       2)  An original and two (2) copies of all suggested questions of the parties to be asked of

4          the jury panel by the Court on *voir dire* shall be submitted to the Clerk for filing on or

5          before _____.

6    d)  Court trials:

7       Proposed findings of fact and conclusions of law shall be filed on or before _____

8       _____.

9

10      The foregoing pretrial order has been approved by the parties to this action as evidenced by

11    the signatures of their counsel hereon, and the order is hereby entered and will govern the

12    trial of this case.  This order shall not be amended except by order of the Court pursuant to

13    agreement of the parties or to prevent manifest injustice.

14

15      DATED: _____

16                           _____

17                           UNITED STATES DISTRICT JUDGE or
                              UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28