**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA -- RENO**

| | |
|---|---|
| THE PIATELLI COMPANY, INC., a California corporation; MARIO PIATELLI, an individual; JACK G. FROST, an individual; JACK GIBSON FROST, INC., a California Corporation; J.D. HUNT, an individual; HUNT BROS. PRODUCING CO., INC., an Oklahoma corporation; and ROBERT DIERKING, an individual,<br><br>    Plaintiffs,<br><br>vs.<br><br>ALAN CHAMBERS, an individual; LAURA CHAMBERS, an individual, and DOES 1 through 10, inclusive,<br><br>    Defendants. | CASE NO: 3:12-cv-00225-RCJ-WGC<br><br><br><br><br><br><br><br><br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

Attorneys and Law Firms:

Clayton P. Brust, Esq. (SBN 5234)
Robison Belaustegui Sharp & Low
71 Washington Street
Reno, NV 89503
Tele: 775.329.3151
cbrust@rbsllaw.com

Dennis V. Menke, Esq. (CA SBN 35104)
Menke & Menke, LLP.
3161 Michelson Drive, Ste. 1500
Irvine, CA 92612-4414
Tele: 949.223.7280
dmenke@menke-menke.com

Lorraine G. Howell, Esq. (CA SBN 202319)
Law Offices of Lorraine Howell
301 E. 17th Street, Ste. 210
Wells Fargo Building
Costa Mesa, CA 92627
Tele: 949.646.5363
lghowell@sbcglobal.net

*Attorneys for Plaintiffs, The Piatelli Company, Inc.,
Mario Piatelli, Jack G. Frost, Jack Gibson Frost, Inc,
J.D. Hbt, Hunt Bros. Producing Co., Inc. and
Robert Dierking*

Michael Morrison, Esq. (SBN 1665)
1495 Ridgeview Dr., Ste. 220
Reno, NV 89519

*Attorney for Defendants, Alan Chambers and
Laura Chambers*

## REPORT AND RECOMMENDATION OF
## U.S. MAGISTRATE JUDGE

ROBERT A. McQUAID, JR., United States Magistrate Judge.

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

Plaintiffs filed a Motion To Enforce Settlement [#49], Plaintiffs' filed a Notice of None Opposition [#54], Defendants' filed an untimely response [#55] and Plaintiffs' filed a reply in support of their motion [#61].

The Court attended the settlement conference proceeding held May 7, 2014, has thoroughly reviewed the record, and held a hearing on Plaintiffs' Motion to Enforce Settlement on June 18, 2014, and recommends that the District Court enter an order enforcing the settlement agreement and dismiss this case with prejudice, retaining jurisdiction to enforce the settlement.

Robison, Belaustegui,
Sharp & Low
71 Washington St.
Reno, NV 89503
(775) 329-3151

I. **Procedural History**

This is an action for Breach of Contract, Intentional Interference with Contractual Relations, Breach of the Covenant of Good Faith and Fair Dealing, Breach of Fiduciary Duty, Injunctive Relief, Declaratory Relief, and Damages. The Plaintiffs, THE PIATELLI COMPANY, INC., a California corporation; MARIO PIATELLI, an individual; JACK G. FROST, an individual; JACK GIBSON FROST, INC., a California Corporation; J.D. HUNT, an individual; HUNT BROS. PRODUCING CO., INC., an Oklahoma corporation; and ROBERT DIERKING, an individual, are seeking damages in their Complaint from Defendants', ALAN CHAMBERS, as individual, and LAURA CHAMBERS, an individual, have asserted Counterclaims.

Pursuant to the District Court's Order [#47], the parties participated in a settlement conference with Honorable Robert A. McQuaid on May 7, 2014. After significant negotiation, the parties agreed to the terms of the settlement that would end this litigation. The terms of the settlement were placed on the record and Honorable Robert McQuaid canvassed each of the parties to confirm their agreement to the settlement. Honorable Robert A. McQuaid also confirmed that counsel for the parties understood the settlement and would work together to further memorialize the settlement in a settlement agreement and release of all claims.

Immediately after placing the settlement on the record, the parties and their counsel reconvened at Plaintiffs' counsel's office to draft the settlement agreement. The parties met for enough time to review and discuss a document that had already been drafted as an initial draft. Defendants', through their counsel and in person, suggested revisions to the initial draft. Defendants then left Plaintiffs' counsel's office with the understanding that requested revisions would be made to the settlement draft

and a final draft would be circulated to the Defendants for their approval and execution. While Defendants were departing Plaintiffs' counsel's office, counsel for Defendants said he expected his clients would review the Settlement Documents immediately and that Plaintiffs would hear from Defendants within 24-48 hours of receiving the final draft. The final draft was sent to Defendants on May 8, 2014.

Defendants have refused to execute the Settlement Agreement and Release of All Claims and any other documents necessary for the settlement (collectively, "Settlement Documents").

As a result of the settlement in this matter, the Court vacated the June 9, 2014 trial date on May 7, 2014 [#48]. As a result of Defendants' refusal to execute the necessary documents, Plaintiffs filed a Motion to Enforce Settlement [#49].

This court has reviewed the records and transcript of the settlement conference proceeding during which Magistrate McQuaid put the terms of the settlement on the record in the presence of Plaintiffs and Defendants' counsel. The terms were stated as follows:

1. The plaintiffs will have the sole right to advertise, develop, market and sell this mining property down near Hawthorne without any participation by the defendants.

2. The defendants agree not to interfere with any of the marketing or sales efforts of the plaintiffs and also agree to stay off the property.

3. The minimal sales price of the property will be $2 million, and that will be net of any commission that is owed any real estate agent or broker.

4. Off of whatever net sales price results, two million or higher, there will be a payment to the plaintiffs of $340,000 which represents their costs and

Robison, Belaustegui, Sharp & Low
71 Washington St.
Reno, NV 89503
(775) 329-3151

attorney's fees to date in this matter.

    5.    The remainder of the sales price will be split 50-50 between the plaintiffs and the defendants.

    6.    There will be no removal of gold until sale. That excepts, if there need be for marketing purposes, a very small amount removed, or, if there need be a -- some kind of a drilling made or something like that, that can be done.

    7.    Any expenses invoiced in advertising, developing marketing and selling the property other than the commission that I just mentioned will be borne by the plaintiffs.

    8.    The sale will be handled through an escrow company. The defendant prefers Cow County Title in Hawthorne, and that's acceptable with everybody, I think, unless there's some sort of a conflict.

    9.    The Plaintiffs' counsel will prepare a written settlement agreement stating these settlement terms.

    10.    After the settlement agreement is signed, the parties will stipulate to dismiss this case, and the lawsuit will end.

The Court canvassed each party and their respective counsel to confirm that everyone understood and agreed to the terms of the settlement agreement and they all stated on record that they understood and agreed to the terms.

The parties met after the settlement conference to draft the Settlement Documents. Plaintiffs' counsel drafted the Settlement Documents, which set out the settlement terms the parties agreed to at the settlement conference and includes additional documents necessary to the settlement. [**Exhibit 1** – attached Settlement Documents]. The Settlement Documents were delivered to Defendants' counsel for

review and signature of Defendants. Defendants refused to sign them; and communication between the parties ceased. Defendants obtained new counsel and in their opposition to the motion to enforce the settlement agreement, Defendants' state:

1. Defendants did not fully agree or understand the terms of the settlement.
2. Defendants' counsel failed to effective advocate on their behalf.
3. Defendants found the terms of the settlement agreement to be altered, varied or added to.

[#55, Defendants' Reply to Motion to Enforce Settlement].

## II.     Discussion and Analysis

Courts have inherent authority to enforce settlement agreements between the parties in pending cases. *See Metronet Services Corp. v. U.S. West Communications*, 329 F.3d 986, 1013-1014 (9th Cir. 2003). (*cert. granted and judgment vacated on other grounds by Quest Corp. v. Metronent Services Corp.*, 540 U.S. 1147 (2004); *Doi v. Halekulani Corporation*, 276 F.3d 1131, 1136-1138 (9th Cir. 2002); *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957, 9th Cir. 1944).

To enforce a settlement agreement, two elements must be satisfied. *Marks-Foreman v. Reporter Pub. Co.*, 12 F.Supp. 2nd 1089, 1092 (S.D. Cal. 1998). First, the settlement agreement must be complete. *Id.*, citing *Maynard v. City of San Jose*, 37 F.3d 1396, 1401 (9th Cir. 1994); *Doi*, 276 F.3d at 1137. Second, the settlement agreement must be the result of an agreement of the parties or their authorized representatives concerning the terms of the settlement. *Marks-Foreman*, 12 F. Supp at 1092, *citing Harrop v. Western Airlines, Inc.*, 550 F.2d 1143, 1144-1145 (9th Cir. 1977), *Doi*, 276 F.3d at 1137-1138. Where parties raise objections after the parties agree to a settlement, the court may rightfully deny such objections. *Harrop*, 550 F.2d at 1144.

Indeed, a settlement agreement is binding even if it is not yet reduced to writing, but is oral in nature and has been placed on the record. *Harrop*, 550 F.2d 1143 at 1145.

The court must first decide whether the settlement was complete. *Marks-Foreman, supra* at 1092. The undersigned Magistrate Judge presided over the settlement proceedings and participated in detailed discussions with the parties and their counsel to reach an agreeable settlement. Once the terms were agreed upon, Defendants did not request any further terms nor did Defendants ever claim that they expected additional terms to the settlement. Specifically, Defendants never requested a limitation on the duration for which Plaintiffs would be exclusively responsible for marketing the mine. Defendants never mentioned such a concern during Plaintiffs' efforts to document the settlement. Defendants did not mention such a concern in their "reply" in opposition to the Plaintiffs' Motion to Enforce Settlement. Defendants' first raised the duration issue at the hearing on Plaintiffs' Motion to Enforce Settlement, several weeks after Defendants had already agreed to the terms of the settlement. Further, this Court finds Alan Chambers' affidavit in support of Defendants' Reply in Opposition to Motion to Enforce Settlement untruthful and unbelievable because it is vague and directly contradicts Mr. Chambers' prior statements to this Court. Significantly, Plaintiffs would not have agreed to a duration limitation on their right to exclusively market the mine.

In this case, as in *Doi*, 276 F.3d 1131, the parties spent several hours in a mediation session and agreed to the settlement of this case. The parties and counsel then reconvened in open court and placed the material terms of the settlement on the record. Plaintiffs and Defendants' counsel, agreed and understood that they had a binding settlement agreement that day and that a written settlement agreement would

Robison, Belaustegui,
Sharp & Low
71 Washington St.
Reno, NV 89503
(775) 329-3151

follow. This is exactly what occurred in this matter.

The court has received the transcript during which Magistrate Judge McQuaid placed the settlement terms on the record and has also reviewed the written Settlement Documents. The court finds that the oral agreement of the parties and the written agreement comport with one another and that the settlement was complete.

The second question is whether the settlement agreement is the result of an agreement of the parties or their authorized representatives. *Marks-Foreman, supra*, at 1092. There is no dispute that defendants' agreed to the settlement terms and that they were reduced to writing. Defendants do not contest that they agreed to the terms placed on the record and set forth in the Settlement Documents. This Court finds that the terms of the settlement placed on the record on May 7, 2017 are identical to the terms of the written Settlement Documents, and that Plaintiffs have not added any new terms. There is no evidence in the transcript of the settlement conference or otherwise that Defendants were under duress, that Judge McQuaid or anyone else pressured Defendants to settle the case, or that Defendants expressed that they were agreeing to the settlement because they wanted the settlement conference to end. Notwithstanding Defendants' subsequent misgivings about the settlement to which they agreed, the agreement embodies the parties' settlement, and it will stand.

### III.  Conclusion

The parties received what they bargained for at the settlement conference, and this action is at an end.

The parties are advised:

1. They may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and

Robison, Belaustegui,
Sharp & Low
71 Washington St.
Reno, NV 89503
(775) 329-3151

Recommendation within fourteen (14) days of receipt. These objections should be titled "Objection to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order, and any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App.P., should not be filed until entry of the District Court's order.

### IV. Recommendation

IT IS THEREFORE RECOMMENDED that the District Court enter an order as follows:

1. RATIFYING the Settlement Documents [attached hereto as **Exhibit 1**] as a binding settlement agreement;

2. ORDERING the defendants' to perform as agreed pursuant to the Settlement Documents and to execute the Settlement Document and all documents necessary to effectuate the settlement agreement;

3. DISMISSING this case with prejudice but that this Court retains jurisdiction of this matter for purposes of enforcing the settlement agreement; and

4. GRANTING Plaintiffs' motion to enforce settlement agreement [49].

IT IS SO ORDERED.

DATED: July 8, 2014.

_____
United States Magistrate Judge
Robison, Belaustegui, Sharp & Low
71 Washington St.
Reno, NV 89503
(775) 329-3151

# EXHIBIT "1"

# EXHIBIT "1"

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

## I. PARTIES

This Settlement Agreement and Mutual Release (the "Settlement Agreement") is by and between The Piatelli Company, Mario Piatelli, Jack G. Frost, Jack Gibson Frost, Inc., J.D. Hunt, Hunt Bros. Producing Company, Inc., Robert Dierking (collectively, "Plaintiffs"), Alan Chambers and Laura Chambers, (collectively "Defendants"). Plaintiffs and Defendants are referred to herein as the "Parties."

## II. RECITALS

WHEREAS a dispute arose between Plaintiffs and Defendants regarding the listing and sale of the mine owned by Lucky Boy Mining and Development, LLC. (the "Dispute and/or Action").

WHEREAS on April 23, 2012, Plaintiffs' filed a Verified Complaint in the United States District Court for the District of Nevada, Case No. 3:12-cv-00225-RCJ-WGC, against Alan Chambers and Laura Chambers and Defendants filed a First Amended Answer and Counterclaim on or about June 5, 2013 (the "Action").

WHEREAS the Parties enter into this Settlement Agreement to formally and finally resolve the issues, allegations, claims, defenses, rights, obligations, and causes of action related to the Dispute and the Action.

## III. COVENANTS

In consideration of the recitals set forth above and incorporated herein by reference, and the promises, rights and benefits set forth herein, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. <u>Consideration</u>.

    a. Plaintiffs shall have exclusive control of the mine owned by Lucky Boy Mining and Development, LLC. ("the Mine"), advertising, negotiations and sale of the mine and full authority to execute any documents to consumate the sale. Defendants agree not to interfere with the sale and negotiations

1

of the sale of the mine, or the sale proceeds and agree to stay off of and not enter the mine property.

b. The property must be sold for no less than Two Million Dollars ($2,000,000.00), and any commission related to the sale shall be added to the sales price.

c. The sum of Three Hundred Forty Thousand Dollars ($340,000.00) which includes costs and attorney fees are to be deducted from gross proceeds (excluding commissions), and paid to Plaintiffs.

d. After the deduction of the $340,000.00 the net sale proceeds shall be distributed 50% to Plaintiffs and 50% to Defendants.

e. There is to be no removal of any gold prior to the sale of the mine with the exception of samples and possible drilling for samples for interested buyers from and after May 7, 2014.

f. Plaintiffs shall bear the costs of advertising and marketing the sale of the mine, except for commissions.

g. Escrow shall be opened at Cow Country Title Company or First American Title Company.

h. Defendants shall reasonably cooperate to provide evidence that Plaintiffs have full authority to sell the mine and Defendants shall execute the documents necessary to effect this Agreement.

2. <u>Dismissal of Action</u>. Prior to May 30, 2014 The Parties shall execute a Stipulation and Order to Dismiss the Action with prejudice with each party to pay their own fees and costs except as indicated otherwise herein.

3. <u>Release and Discharge</u>.

a. <u>Plaintiffs' Release of Defendants</u>. Plaintiffs, on behalf of themselves, and their respective heirs, beneficiaries, successors, assigns, representatives, officers, directors, parents, subsidiaries, shareholders and agents

hereby releases and covenants not to sue or encourage others to sue Defendants and/or their respective owners, parents, subsidiaries, affiliates, agents, employees, shareholders, members, representatives, beneficiaries, successors, and assigns on any or all claims, actions, causes of action, suits, debts, sums of money, accounts, covenants, contracts, agreements, representations, warranties, damages, injuries, liabilities and demands whatsoever, in law, equity, arbitration, administrative proceeding or otherwise, whether known or unknown, contingent or fixed, liquidated or unliquidated, arising out of or in any way related to the Parties' Dispute and/or the Action, which Plaintiffs ever had, now has, or hereafter may have. The foregoing release and covenant shall exclude claims to enforce the rights and duties created by this Settlement Agreement.

      b.    <u>Defendants' Release of Plaintiffs</u>. Defendants, on behalf of themselves and their respective heirs, beneficiaries, successors, assigns, representatives, officers, directors, parents, subsidiaries, shareholders and agents hereby release and covenant not to sue or encourage others to sue Plaintiffs and/or its owners, parents, subsidiaries, affiliates, agents, employees, shareholders, members, representatives, beneficiaries, successors, and assigns on any or all claims, actions, causes of action, suits, debts, sums of money, accounts, covenants, contracts, agreements, representations, warranties, damages, injuries, liabilities and demands whatsoever, in law, equity, arbitration, administrative proceeding or otherwise, whether known or unknown, contingent or fixed, liquidated or unliquidated, arising out of or in any way related to the Parties' Dispute and/or the Action, which Defendants ever had, now have, or hereafter may have. The foregoing release and covenant shall exclude claims to enforce the rights and duties created by this Settlement Agreement.

      c.    <u>Unknown Claims</u>. The Parties recognize that each of them may have claims against the other of which they are unaware and unsuspecting that arise from the circumstances surrounding the Dispute and/or the Action. Except as otherwise

provided herein, it is the intention of the Parties in entering into this Settlement Agreement that it will deprive each party of such claims and prevent them from asserting them now or in the future. To this end, the Parties waive all rights and benefits conferred upon them by the statutes or common law of any jurisdiction that has the same or similar effect as the provision set forth below:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

4.  <u>Compromise of Disputed Claims</u>. This Settlement Agreement is the compromise of disputed claims arising out of, connected with, and relating to the Dispute and/or the Action and is not an admission of liability of any party.

5.  <u>Binding Nature of Agreement</u>. This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, subsidiaries, successors, beneficiaries, representatives and assigns.

6.  <u>Attorney Fees</u>. If any action shall be brought on account of any default or breach of, or to enforce any of the obligations, terms, covenants or conditions of the Settlement Agreement, the prevailing party shall be entitled to recover from the other party all of its costs and reasonable attorneys' fees.

7.  <u>Entire Agreement of the Parties</u>. This Settlement Agreement is the entire, complete, sole and only understanding and agreement of, by, and between the parties pertaining to the subject matter expressed herein, and there are no independent, collateral, different, or other obligations to be performed, or things to be done, and further, no promise, inducement, or consideration has been agreed to by, or promised on behalf of, either party.

8.  <u>Modification</u>. This Settlement Agreement may not be modified, supplemented or amended in whole or in part except by an agreement in writing signed by all of the parties to this Settlement Agreement, and executed in the same manner as this Settlement Agreement. No waiver shall be binding unless executed in writing by

4

the party making the waiver. No waiver of any of the provisions of this Settlement Agreement shall be deemed, or shall constitute, a waiver of any other provisions, whether or not similar.

9. <u>Ownership of Claims.</u> Each Party represents and warrants that it is the sole owner of the claims and actions which are waived, released and/or settled by this Settlement Agreement, that there has been no prior assignment or transfer of those claims and actions, and that those claims and actions are not subject to any security interest, lien, or other encumbrance.

10. <u>No Third Party Beneficiaries.</u> This Settlement Agreement is made for the sole and exclusive benefit of the Parties hereto and is not intended to benefit any third party. No such third party may claim any right or benefit or seek to enforce any term or provision of this Agreement.

11. <u>Review of Settlement Agreement by Parties' Attorneys</u>. This Settlement Agreement has been reviewed by attorneys for Plaintiffs and Defendants. For purposes of interpretation, all parties shall be deemed to have been the drafter of this Settlement Agreement.

12. <u>Governing Law; Venue</u>. All disputes regarding this Settlement Agreement shall be governed by the laws of Nevada; venue for any action brought in connection with this Agreement shall be any federal or state court of competent jurisdiction located in Washoe County, Nevada.

13. <u>Severability</u>. All terms and conditions contained herein are severable. If any court of competent jurisdiction finds any term or condition of this Settlement Agreement unenforceable, the court shall interpret this Settlement Agreement as if the Settlement Agreement did not contain such unenforceable term or condition.

14. <u>Authority to Execute Settlement Agreement</u>. Each party and signatory hereto warrants and represents to the other that he/she/it has the power, capacity and authority to enter into and execute this Settlement Agreement.

15. <u>Confidentiality</u>. The Parties and their respective attorneys agree to keep this Settlement Agreement confidential. Therefore, the Parties agree that, except as required by law (including the issuance of a lawful subpoena), the Parties, on behalf of themselves and their respective predecessors, successors, beneficiaries, heirs, and assigns, hereby agree, covenant, represent and warrant that none of them shall, directly or indirectly, or by any means or manner whatsoever, disclose, urge, encourage, cooperate in, cause or permit the disclosure of the contents or substance of this Settlement Agreement or any consideration given or received pursuant hereto. This notwithstanding, the Parties may disclose the fact that they have entered into this Settlement Agreement and that all claims have been dismissed with prejudice, but shall not otherwise disclose the contents or substance of this Settlement Agreement. The Parties may, however, disclose the contents or substance of this Settlement Agreement to their respective attorneys or accountants in order to obtain legal advice or to file tax returns, but only on condition that those attorneys and accountants agree to keep the contents and substance of this Settlement Agreement confidential.

16. <u>Counterpart Signatures</u>. This Agreement can be signed by the Parties in counterpart with each party signing a different copy and in different locations.

**DATED** this _____ day of June, 2014

_____
Alan Chambers

**DATED** this _____ day of June, 2014
The Piatelli Company, Inc.

_____
By: Mario Piatelli
    President

DATED this _____ day of June, 2014

_____
Laura Chambers

DATED this _____ day of June, 2014

_____
Mario Piatelli

…

| | |
|---|---|
| **DATED** this ____ day of June, 2014 | DATED this ___ day of June, 2014. |
| Jack Gibson Frost, Inc. | _____ |
| | J.D. Hunt |
| _____ | |
| By: _____ | DATED this ___ day of June, 2014. |
| Title: _____ | Hunt Bros. Producing Co., Inc. |
| | |
| DATED this ___ day of June, 2014. | _____ |
| | By:_____ |
| | Title:_____ |
| _____ | |
| Jack G. Frost | |
| | |
| DATED this ____ day of June, 2014. | |
| | |
| _____ | |
| Robert Dierking | |

7

## **Authorization**

To Whom It May Concern:

    I, Alan Chambers, a Member of the Lucky Boy, LLC, hereby acknowledge that I have irrevocably given full authority to Mario Piatelli or successor President, to negotiate, approve, and execute any documents necessary to consummate a sale of the Lucky Boy Mine and Development, LLC. or the land or mine owned by the LLC.

    Dated: June _____, 2014.

                                                                                                                 _____
                                                                                                                Alan Chambers

SUBSCRIBED and SWORN
to before me this _____ day
of June, 2014, by Alan Chambers.

_____
Notary Public

## **CONSENT**

  I, Laura Chambers, consent to the attached authorization executed by my husband, Alan Chambers on June _____, 2014.

  Dated: June _____, 2014.

              _____
              Laura Chambers

SUBSCRIBED and SWORN
to before me this _____ day
of June, 2014, by Laura Chambers.

_____
Notary Public